UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| KEVIN S. KANG,<br>Plaintiff<br>v.<br>GEISEL SCHOOL OF MEDICINE AT DARTMOUTH and TRUSTEES OF DARTMOUTH COLLEGE,<br>Defendants | No. 1:25-cv-00412 |

**ANSWER AND JURY DEMAND**

Dartmouth College, the formal name of which is Trustees of Dartmouth College, answers the correspondingly numbered paragraphs of the Complaint as follows.[1]

**INTRODUCTION**[2]

1. Admitted that the Complaint purports to state claims under Title VI and state contract law. Otherwise denied.

2. Admitted that Plaintiff identifies as male, dark-skinned, and of Indian descent; he was awarded a Goldwater Scholarship in 2017; he graduated from Dartmouth College as one of six salutatorians in the undergraduate class of 2018; he was offered early admission to Dartmouth's Geisel School of Medicine; and he matriculated at Geisel. Otherwise denied.

3. Denied.

4. Denied.

---

[1] The Complaint also purports to name as a defendant Dartmouth's Geisel School of Medicine, which is not a separate legal entity.

[2] The Answer incorporates the headings of the Complaint for ease of reference only. Any factual allegations contained in those headings are denied.

## PARTIES

5. Admitted upon information and belief.

6. Admitted.

7. Admitted that Trustees of Dartmouth College is the formal, corporate name of Dartmouth College, which is a private, post-secondary, Ivy League institution with the capacity to sue and be sued; Geisel School of Medicine is among the schools that make up Dartmouth College; and Dartmouth is a recipient of federal financial assistance and other funding. Otherwise denied.

8. Admitted.

9. Admitted.

## VENUE AND JURISDICTION

10. Admitted.

11. Admitted.

12. Admitted.

## GENERAL FACTUAL ALLEGATIONS

13. Dartmouth incorporates by reference the paragraphs above.

14. Denied.

15. Admitted that Plaintiff enrolled at Geisel in the Summer of 2018, based in part upon his strong academic record as an undergraduate at Dartmouth; he paid all tuition and fees at Geisel; and he successfully completed some – but not all – coursework and clinical clerkships. Otherwise denied.

16. Admitted that in the Spring 2021 term, Plaintiff reportedly contracted COVID-19; he failed the Shelf Exam component of his core surgery clerkship; and he received a passing score on the clinical components of that clerkship. Otherwise denied.

17. Admitted that Geisel policy provides that if a student fails only the Shelf Exam component of a clerkship, the student may remediate the clerkship by re-taking and passing the Shelf Exam; because Plaintiff performed poorly on the clinical aspects of his clerkship and intended to specialize in surgery, the Clerkship Co-Directors recommended to Plaintiff and the Associate Dean of Clinical Education that Plaintiff's remediation of the clerkship include a complete re-take of the clerkship – a recommendation with which Plaintiff and the Associate Dean agreed; and that Plaintiff began the repeat clerkship in Spring 2023. Otherwise denied.

18. Admitted that remediation of a Shelf Exam without repeating an entire clerkship was standard practice if a student otherwise passed all the clinical components of a clerkship, and that it is not uncommon for medical students to fail a Shelf Exam. Otherwise denied.

19. Admitted that Plaintiff was not accused of cheating or other academic dishonesty while a student at Dartmouth, and that a student who failed a Shelf Exam or entire clerkship, successfully remediated that failure, and otherwise satisfied all requirements for graduation, could be permitted to graduate. Dartmouth lacks information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

20. Admitted that Plaintiff underwent a comprehensive psychological evaluation in March 2021, in which he apparently reported symptoms including memory impairment, difficulty concentrating, and diminished academic performance, and which resulted in a diagnosis of Major Depressive Disorder. Otherwise denied.

21. Denied that Plaintiff presented any such results or requested any such accommodations during an APC meeting and accordingly that the APC or Geisel leadership had any occasion to act on any such request.

22. Denied that the APC meeting was on June 5, 2024; that Plaintiff presented or attempted to present the results of his psychological evaluation or any request for accommodations; and accordingly that APC had occasion to consider any such documentation or request.

23. Admitted that Plaintiff was granted accommodations allowing him extra time in which to take Shelf Exams. Denied that Plaintiff made any request to inform clinical preceptors of any diagnosed condition during clerkship or that this would be a required or appropriate accommodation in any event. Otherwise denied.

24. Admitted that in Spring 2023, Plaintiff retook the Surgery shelf exam and scored in the 80th percentile, which was a marked improvement from his prior score in the 1st percentile; he failed the Trauma/Acute Care Surgery (ACS) component of the Surgery clerkship; and he passed the Orthopedics component of the clerkship. Otherwise denied.

25. Admitted that in Spring 2023, the Committee on Student Performance and Conduct (CSPC) was replaced by a newly formed Academic Progress Committee (APC). Otherwise denied.

26. Admitted that Plaintiff received a grade of "Incomplete" for the Spring 2021 core surgery clerkship and that the APC correctly understood Plaintiff repeated the entire Surgery clerkship in Spring 2023 and partially repeated the Surgery clerkship in Fall 2024. Otherwise denied.

27. Admitted that Plaintiff passed the clinical portion of the 2021 Surgery clerkship; failed the 2021 shelf exam; and later successfully remediated the shelf exam failure. Otherwise denied.

28. Admitted that on March 12, 2021, Dr. Crockett sent Plaintiff an email in which Dr. Crockett noted that Plaintiff failed shelf exam and that he achieved passing scores on the clinical component of the clerkship, despite not successfully completing the clinical component of the clerkship. Otherwise denied.

29. Admitted that Dr. Crockett recommended and Plaintiff agreed to repeat the surgery clerkship in Spring 2023, which he failed, leading to a partial repeat of the surgery clerkship in Fall 2024, which he also failed. Otherwise denied.

30. Admitted that Plaintiff failed his Pediatrics clerkship in Fall 2022, in connection with which he received negative evaluations and recommendations for remediation. Otherwise denied.

31. Admitted that due to deficiencies in his clinical performance, Plaintiff performed additional clinical work with several clinicians including but not limited to Drs. Dick, Lim-Liberty, Randhawa, and Del Giudice. Otherwise denied.

32. Admitted that on April 19, 2023, Dr. Crockett informed Plaintiff that he had failed his repeat of the Surgery clerkship due to his performance in the Trauma/Acute Care Surgery (ACS) component. Otherwise denied.

33. Admitted that the APC's deliberations and decision do not reflect that Plaintiff successfully remediated and passed his Pediatrics clerkship, because he did not do so. Otherwise denied.

34. Admitted that on April 15, 2024, Plaintiff met with Dr. Crockett to discuss his standing and feedback on his conduct and performance, including his conduct and performance during his failed Spring 2023 surgery clerkship. Otherwise denied.

35. Admitted that on April 16, 2024, Dr. Crockett emailed Plaintiff a summary of their April 15, 2024 meeting, and that the summary noted, among other things, Plaintiff's unprofessional behavior. Otherwise denied.

36. Admitted that on April 18, 2024, Dr. Billmeier, Director of the Minimally Invasive Surgery (MIS) rotation, sent Plaintiff an email with feedback on his performance during clinic that day, and that Dr. Billmeier's feedback included multiple criticisms, including concerns relating to presentation organization and patient comfort. Otherwise denied.

37. Admitted that on April 27, 2024, Plaintiff received an email from Dr. Sorensen, stating that due to unforeseen circumstances, Dr. Billmeier would be unable to accommodate a student the following week – a reference to Plaintiff's request to spend extra time on Dr. Billmeier's service – and that Plaintiff would be assigned to Dr. Trus for the remaining two days of his rotation. Admitted that Angel Moore, a white female student, participated in her regularly scheduled rotation on Dr. Billmeier's service the following week. Admitted that Plaintiff identifies as an Indian male of darker complexion. Otherwise denied.

38. Dartmouth lacks information sufficient to form a belief as to the truth of the allegations of this paragraph.

39. Admitted that Dr. Crockett informed Plaintiff that he had exhibited behavior that made Dr. Billmeier, among others, feel unsafe; that Dr. Billmeier had security escort her home; and that Plaintiff should refrain from entering the Surgery Division offices without reason to be there, which he ordinarily would not have. Otherwise denied.

40. Denied that the Surgery Division offices are "essential clinical spaces" and that any lack of access to those offices "would irreparably damage [Plainitff's] standing and his

ability to complete his medical education. Dartmouth lacks information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

41. Denied.

42. Admitted that Drs. Trus and Lamb were involved in Plaintiff's clerkship supervision. Otherwise denied.

43. Dartmouth lacks information sufficient to form a belief as to the truth of the allegations of this paragraph.

44. Admitted that Dr. Billmeier did not communicate to Plaintiff that she felt threatened by him. Dartmouth lacks information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

45. Denied that prior to the final day of Plaintiff's clerkship, he never had been the subject of reports of threatening or potential threatening behavior. Denied that Dr. Crockett ever said, "This is ridiculous – Kevin is not threatening." Dartmouth lacks information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

46. Denied that Dr. Billmeier uploaded "her" evaluation of Plaintiff's performance in the Minimally Invasive Surgery (MIS) rotation, as she uploaded a composite evaluation including feedback from other clinicians. Admitted that the evaluation was uploaded shortly after Plaintiff completed the MIS rotation. Admitted that Plaintiff's failure of the MIS rotation, along with his other failures in the curriculum, was among the reasons for Plaintiff's separation from Geisel. Otherwise denied.

47. Admitted that Dr. Billmeier declined to work with Plaintiff for the remaining two days of his rotation due to concerns about his behavior. Otherwise denied.

48. Admitted that on May 28, 2024, the APC met to consider Plaintiff's performance and status. Denied that Dr. Dick was Plaintiff's support person at the meeting and that Plaintiff was unaware his separation from Geisel was a possible or likely outcome. Admitted that Plaintiff subsequently learned the APC recommended his dismissal from Geisel. Otherwise denied.

49. Admitted that Dr. Del Giudice attended the meeting as Plaintiff's support person; he later submitted a letter criticizing the APC's handling of the matter; Dr. Chimienti was present at the meeting and subsequently helped Plaintiff secure a Master of Medical Sciences degree; and Dr. Dick, the Associate Dean of Clinical Education, was present at the meeting. Otherwise denied.

50. Admitted that on June 5, 2024, Dr. Chimienti informed Plaintiff for the first time that the APC recommended his separation from Geisel and the Dean accepted that recommendation. Otherwise denied.

51. Admitted that Dean Compton received an unsigned letter dated June 7, 2024, which purports to be from Dr. Del Guidice, addressed to Dean Compton and Dr. Torrey, which states that Dr. Del Guidice was present at the May 28, 2024 APC meeting; he was prepared to speak in support of Plaintiff; but he was "not given the opportunity to speak" and "wasn't even introduced or acknowledged." Admitted that the letter contains the statement, "Kevin's opportunity before the committee had been compromised because they failed to gather all the pertinent information available to them." Otherwise denied.

52. Denied.

53. Denied.

54. Admitted that Ms. Smith had the ability to modify the online record. Otherwise denied.

55. Denied that the evaluation was updated and thus that there was any occasion to disclose an updated evaluation. Otherwise denied.

56. Admitted that on June 3, 2024, Dean Compton accepted the APC's recommendation to separate Plaintiff from Geisel; Plaintiff appealed the decision to separate him on June 17, 2024, asserting among other grounds a purported revision to the MIS evaluation; and that an ad hoc appeal committee denied Plaintiff's appeal. Otherwise denied.

57. Admitted that Plaintiff met with the ad hoc appeal committee on July 15, 2024, at which time he presented his argument and supporting evidence. Dartmouth lacks information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

58. Admitted that Dr. Crockett met with the ad hoc appeal committee the following day. Otherwise denied.

59. Admitted.

60. Admitted that Plaintiff was separated from Geisel. Dartmouth lacks information sufficient to form a belief as to the truth of the allegations concerning Plaintiff restarting his medical training at a lesser-known institution. Otherwise denied.

**COUNT I**
**DISCRIMINATION BASED ON RACE, COLOR, OR NATIONAL ORIGIN**
**(Trustees of Dartmouth College, Violation of Title VI, 42 U.S.C. § 2000d et seq.)**

61. Dartmouth incorporates by reference the paragraphs above.

62. Admitted.

63. Denied.

64. Denied that Drs. Crockett or Billmeier or others at Dartmouth engaged in any discriminatory conduct toward Plaintiff. Denied that Plaintiff informed Geisel leadership of any

belief that he was being mistreated due to his race, color, national origin, or gender, and accordingly there was no occasion to investigate or remedy any allegedly discriminatory conduct. Otherwise denied.

65. Admitted that Dr. Billmeier worked with Ms. Moore during a regularly and previously scheduled rotation. Otherwise denied.

66. Denied.

67. Denied.

68. Denied.

69. Denied.

70. Denied.

71. Admitted that Dean Compton was the highest-ranking official at Geisel during his time as Dean. Denied that Plaintiff presented to Dean Compton any evidence of intentional discrimination; accordingly, he had no such "actual knowledge" and no occasion to investigate, discipline, or reprimand Drs. Billmeier and Crockett or anyone else at Geisel for alleged discrimination. Admitted that Dean Compton affirmed the APC's recommendation to separate Plaintiff. Otherwise denied.

72. Denied.

73. Denied.

**COUNT II**
**DISCRIMINATION BASED ON DISABILITY**
**(42 U.S. Code § 12182 - Prohibition of Discrimination by Public Accommodations)**

74. Dartmouth incorporates by reference the paragraphs above.

75. Admitted, except that the first line of this subsection says, "No individual shall be discriminated against *on the basis of* disability" (emphasis added), not "*based on* disability" (emphasis added).

76. Admitted that subsection (b)(2)(A)(i) includes the quoted language. Denied that it is "relevant" here.

77. Denied.

78. Admitted.

79. Admitted.

80. Admitted that Plaintiff was diagnosed with a Major Depressive Disorder. Otherwise denied.

81. Dartmouth lacks information sufficient to form a belief as to truth of the allegations of this paragraph.

82. Admitted that 42 U.S.C. § 12102(4)(A) provides that the term "disability," as it is used in that chapter, shall be construed in favor of broad coverage of individuals under that chapter, to the maximum extent permitted by that chapter. Otherwise denied.

83. Admitted that Geisel was made aware of Plaintiff's condition involving migraine headaches in 2021, for which he was provided accommodations. Otherwise denied.

84. Denied.

85. Denied.

86. Denied.

87. Denied.

**COUNT III**
**DISCRIMINATION IN VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 - 29 U.S.C. § 701 et seq.**

88. Dartmouth incorporates by reference the paragraphs above.

89. Admitted.

90. Admitted that Plaintiff requested accommodations relating to his migraine headaches. Otherwise denied.

91. Denied that Plaintiff requested such accommodations and thus there was no occasion on which Dartmouth "refused" to provide them.

92. Denied that Plaintiff requested such accommodations or that they would have been reasonable if he had done so.

93. Dartmouth lacks information sufficient to form a belief as to the truth of the allegations of this paragraph.

94. Denied.

95. Denied.

96. Admitted that intentional discrimination is not required to establish liability under Section 504. Otherwise denied.

97. Admitted that Plaintiff seeks the stated relief. Otherwise denied.

**COUNT IV**
**BREACH OF CONTRACT**

98. Dartmouth incorporates by reference the paragraphs above.

99. Admitted.

100. Admitted that Dartmouth's contractual relationship with Plaintiff included relevant policies and procedures published by the School of Medicine. Otherwise denied.

101. Denied.

102. Denied.

103. Denied.

104. Denied.

105. Denied.

106. Denied.

**COUNT V**
**PROMISSORY ESTOPPEL**

107. Dartmouth incorporates by reference the paragraphs above.

108. Denied.

109. Denied.

110. Admitted that all evaluations would be conducted fairly and without bias. Otherwise denied.

111. Denied.

112. Denied.

113. Denied.

114. Denied.

115. Admitted that Plaintiff seeks equitable relief. Otherwise denied.

**COUNT VI**
**PROCEDURAL DUE PROCESS VIOLATION**

116. Dartmouth incorporates all preceding paragraphs by reference.

117. Admitted.

118. Denied.

119. Denied.

120. Denied.

121. Denied.

122. Denied.

123. Admitted that Plaintiff seeks damages and equitable relief. Otherwise denied.

**Attorney's Fees and Costs**

124. Admitted that Plaintiff seeks an award of attorney's fees and costs. Otherwise denied.

**AFFIRMATIVE DEFENSES**

1. Count I, alleging discrimination on the basis of race, color, and national origin in violation of Title VI, fails as a matter of law because Plaintiff cannot establish that the alleged conduct involved any intentional discrimination on the basis of race, color, or national origin.

2. Count I fails as a matter of law because Plaintiff cannot establish that Dartmouth treated any similarly situated person of a different race, color, or national origin differently.

3. Count I fails as a matter of law because Dartmouth had legitimate, non-discriminatory reasons for the alleged conduct, and Plaintiff cannot demonstrate that those reasons were a pretext for discrimination.

4. Count I fails as a matter of law because Plaintiff cannot establish that Dartmouth officials had actual knowledge of any alleged discrimination in violation of Title VI and acted with deliberate indifference.

5. Count I fails as a matter of law to the extent Plaintiff is alleging discrimination on the basis of sex or gender, neither of which is a protected classification under Title VI.

6. Count I fails as a matter of law because Plaintiff cannot establish that he suffered actionable harm as a result of the alleged discrimination.

7. Counts II and III, alleging disability discrimination in violation of the ADA and Section 504 of the Rehabilitation Act, fail as a matter of law to the extent Plaintiff is not a qualified disabled person.

8. Counts II and III fail as a matter of law because Dartmouth did not deny Plaintiff any reasonable accommodation that he requested.

9. Counts II and III fail as a matter of law to the extent Plaintiff never requested accommodations or requested accommodations retroactively.

10. Counts II and III fail as a matter of law to the extent Plaintiff requested accommodations that were unreasonable or would require a fundamental change of Dartmouth's academic standards.

11. Counts II and III fail as a matter of law because – in the event Plaintiff can establish that Dartmouth failed to provide a reasonable accommodation required by law – Plaintiff cannot establish that Dartmouth decision-makers were deliberately indifferent by knowingly disregarding a high likelihood that their inaction violated Plaintiff's federal rights.

12. Counts II and III fail as a matter of law because Plaintiff cannot establish that he suffered actionable harm as a result of the alleged discrimination.

13. Count IV, alleging breach of contract, fails as a matter of law because Plaintiff cannot establish that Dartmouth failed to comply with its policies or otherwise violated any contractual obligation to Plaintiff.

14. Count IV fails as a matter of law because Plaintiff cannot establish that he suffered actionable harm as a result of any alleged breach of contract.

15. Plaintiff's recovery, if any, for breach of contract is precluded or must be reduced to the extent Plaintiff failed to mitigate his claimed damages.

16. Count V, alleging promissory estoppel, fails as a matter of law because Plaintiff's claims are governed by an enforceable contract between the parties.

17. Count V fails as a matter of law because Plaintiff cannot establish that he reasonably relied to his detriment on any alleged promise by Dartmouth.

18. Count V fails as a matter of law because the enforcement of any alleged promise by Dartmouth is not required to avoid injustice.

19. Count VI fails as a matter of law for the same reasons that Count IV fails.

**JURY DEMAND**

Dartmouth demands a trial by jury on all claims so triable.

TRUSTEES OF DARTMOUTH COLLEGE,

*/s/ Brian R. Ellixson*
Daron L. Janis (N.H. Bar. No. 271361)
Daryl J. Lapp, *pro hac vice*
Brian R. Ellixson, *pro hac vice*
TROUTMAN PEPPER LOCKE LLP
111 Huntington Avenue
Boston, MA 02199
daron.janis@troutman.com
daryl.lapp@troutman.com
brian.ellixson@troutman.com
(617) 239-0100

April 15, 2026

**Certificate of Service**

I certify that on April 15, 2026, I caused the foregoing document to be served on counsel of record for the plaintiff through the Court's CM/ECF system.

*/s/ Brian R. Ellixson*
Brian R. Ellixson